495 U.S. 911
 110 S.Ct. 1938
 109 L.Ed.2d 301
 John Edward SWINDLER, petitioner,
v.
 A.L. LOCKHART, Director, Arkansas Department of Correction. No. 89-6679. Supreme Court of the United States April 23, 1990 Petition for writ of certiorari to the United States Court of Appeals for the Eighth Circuit. Denied. djQ Justice MARSHALL, with whom Justice BRENNAN joins, dissenting. A defendant's interest in a fundamentally fair trial outweighs the State's interest in trying the defendant in a particular venue. See, e.g., Lee v. Georgia, 488 U.S. 879, 109 S.Ct. 195, 102 L.Ed.2d 165 (1988) (MARSHALL, J., dissenting from denial of certiorari). Accordingly, state laws that restrict a court's ability to protect a defendant from the possibility of juror exposure to prejudicial publicity unconstitutionally infringe on a defendant's right to a fair and impartial jury. Relying in part on its interpretation of Arkansas law, see Ark.Code Ann. § 16-88-207 (1987) ("In no case shall a second removal of the same cause be allowed"), the trial court in this capital case refused to allow petitioner a second change of venue. I would grant the petition for certiorari to provide much needed guidance regarding the minimal due process requirements for state change of venue rules. When, as here, a State frames its venue rule in absolute terms and fails to permit the trial court to consider a particular defendant's right to a jury free from preconceptions regarding his guilt, such a rule violates due process. See Sheppard v. Maxwell, 384 U.S. 333, 352, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600 (1966) (" 'It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused. Nevertheless, at times a
 
 [912]
 procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process' ") (quoting Estes v. Texas, 381 U.S. 532, 542-543, 85 S.Ct. 1628, 1632-1633, 14 L.Ed.2d 543 (1965)). Even if I did not believe that this case merited plenary review, I would grant the petition for writ of certiorari and vacate the death penalty, because I continue to believe that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, Gregg v. Georgia, 428 U.S. 153, 231-241, 96 S.Ct. 2909, 2973-2977, 49 L.Ed.2d 859 (1976) (MARSHALL, J., dissenting). Petitioner was convicted of murdering a police officer and sentenced to death. His conviction was reversed by the Arkansas Supreme Court because of the trial court's failure to grant a change of venue from Sebastian County, where the killing occurred. Swindler v. State, 264 Ark. 107, 113, 569 S.W.2d 120, 123 (1978). Petitioner was thereafter retried in Scott County, a small rural county adjacent to Sebastian. Waldron, the seat of Scott County, is only 45 miles south of Fort Smith, the location of both the crime and the first trial. During voir dire, a majority of the 120 venirepersons indicated that they were aware that petitioner had previously been found guilty of the crime and that he was wanted in another State for allegedly murdering two teenagers. More importantly, an overwhelming majority of the venire—98 out of 120—either tentatively or firmly believed that petitioner was guilty. The strong local feelings regarding petitioner's guilt are reflected in the comments of venireperson Thomas Bricksey: "Q. [H]ave you discussed this case with anybody? "A. Oh, yes, sir. "Q. All right, and have these people expressed an opinion to you about this case? "A. Yes, sir. "Q. Could you tell me what those opinions were? Did they think the defendant was guilty? "A. I am afraid it was almost unanimous. "Q. Did you ever hear anybody state that they thought he was not guilty? "A. No sir." Tr. 1299. Similar prejudicial attitudes surfaced in the voir dire of three other jurors whom petitioner challenged for cause but who, unlike
 [913]
 Bricksey, ultimately served on petitioner's jury. Each indicated that he believed petitioner was guilty as a result of exposure to pretrial publicity regarding petitioner's first trial. One of the jurors, Thurman Jones, when asked whether he accepted the principle that a person is innocent until proved guilty, replied, "I do, and I would accept it more if he had not been tried. The only thing I am wondering about now, since he has had a trial, and I know about it, I am wondering if he is not going to have to prove to me that he is innocent." Tr. 1149. Milton Staggs, another juror challenged by petitioner, when asked whether he had an opinion about the first verdict, stated, "Well, sure, based on what came out, I don't know how it could be otherwise, you know." Tr. 1223. Henry Sunderman, asked whether "you feel like because [the first jury] came to that conclusion that the defendant may well be guilty," replied "I would say yes." Tr. 979. The trial court, finding that each of the three challenged jurors was capable of setting aside his opinion regarding petitioner's guilt, denied petitioner's request that they be struck for cause. During the five days of voir dire, petitioner requested a change of venue on several occasions. The trial court denied the motions, relying in part on the Arkansas venue statute, § 16-88-207. Tr. 878-879, 1407-1408, 1560. At other points, the trial judge rejected the venue change in apparent reliance on "the fact that [petitioner] still ha[d peremptory] challenges left," Tr. 1075, although petitioner exhausted his challenges before the entire jury was seated. At the close of jury selection, petitioner moved for a mistrial on the ground that the state statute prohibiting a second change of venue unconstitutionally deprived him of a fair and impartial jury. The trial court conceded that "it is quite obvious that this case has received great amounts of publicity, and [that] it is very difficult to find a juror, not only [in] Sebastian County but apparently throughout this part of even the western part of Arkansas, who have [sic] not read, heard or seen a great deal about it." Tr. 1559. The court nonetheless denied the motion on the basis of "the present Arkansas law and the record that was made" during jury selection. Tr. 1560. Petitioner filed a petition for habeas corpus. The District Court denied relief and the Court of Appeals for the Eighth Circuit affirmed, rejecting petitioner's claim that his constitutional right to a fair and impartial jury was compromised by the trial court's refusal to change venue or to strike for cause jurors Jones,
 [914]
 Staggs, and Sunderman. 885 F.2d 1342, 1347-1350 (1989). The court afforded a "presumption of correctness" to the state-court findings regarding the ability of jurors to set aside whatever prejudice they harbored against petitioner. Id., at 1347. The court also relied on Eighth Circuit precedent, Simmons v. Lockhart, 814 F.2d 504 (1987), in which the court had stated that "the fact that a venire panel is well informed on reported news is not by itself prejudicial." Id., at 510. Lastly, the court rejected petitioner's constitutional challenge to Arkansas' change of venue rule because "the trial court based its denial of a second change of venue on the fact that Swindler had not established prejudice resulting from pretrial publicity." 885 F.2d, at 1347. We have yet to address squarely the constitutionality of state change of venue rules that limit a trial court's ability to protect a defendant from the effects of prejudicial publicity.* Here, the Court of Appeals attempted to avoid the constitutional question by relying on the trial court's finding that the empaneled jury was not unduly prejudiced. But the Court of Appeals failed to consider the extent to which the Arkansas rule affected the trial court's assessment of prejudice. The transcript makes clear that the Arkansas rule was a strong factor in the trial court's decision and that the court had difficulty separating its merits judgment from its fear that a transfer of venue to another county "would cause a serious jurisdictional problem" under Arkansas law. Tr. 1560. The state court's refusal to transfer venue may have been substantially affected by Arkansas' venue rule. When, on the basis of such rules, a court fails to protect the defendant from a trial that may be "but a hollow formality," Rideau v. Louisiana, 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963), this Court has a special obligation to consider their constitutionality and to specify the due process constraints on their application. I dissent. ----------* The fact that petitioner's claim in this case arises on a federal petition for habeas corpus does not bar its consideration. Cf. Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Assuming that the rule sought by petitioner is "new," it also falls within the category of "procedures without which the likelihood of an accurate conviction is seriously diminished." Id., at 313, 109 S.Ct. at 1064. The likelihood of an accurate conviction is no doubt diminished when a defendant is tried by a jury that has prejudged his case. Hirsh v. City of Atlanta, Ga. [110SCt2163,495US927,109LEd2d493] 110 S.Ct. 2163 495 U.S. 927 109 L.Ed.2d 493 Michael HIRSH, et al., applicants, v. CITY OF ATLANTA, GEORGIA. No. A-752. Supreme Court of the United States May 14, 1990 The application for stay presented to Justice KENNEDY and by him referred to the Court is denied. djQ Justice STEVENS, concurring. It would be irresponsible to attempt to distinguish National Socialist Party of America v. Skokie, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977), on the basis of any difference in the content of the speech involved in that case and the content of the speech involved in this. It is entirely proper, however, to draw a distinction between injunctive relief imposing time, place, and manner restrictions upon a class of persons who have persistently and repeatedly engaged in unlawful conduct, on the one hand, cf. National Society of Professional Engineers v. United States, 435 U.S. 679, 697-698, 98 S.Ct. 1355, 1368-1369, 55 L.Ed.2d 637 (1978); United States v. Paradise, 480 U.S. 149, 193, 107 S.Ct. 1053, 1078, 94 L.Ed.2d 203 (1987) (STEVENS, J., concurring in judgment), and an injunction that constitutes a naked prior restraint against a proposed march by a group that did not have a similar history of illegal conduct in the jurisdiction where the march was scheduled. Cf. Organization for a Better Austin v. Keefe, 402 U.S. 415, 419-420, 91 S.Ct. 1575, 1577-1578, 29 L.Ed.2d 1 (1971); Shuttlesworth v. Birmingham, 394 U.S. 147, 162-163, 89 S.Ct. 935, 944-945, 22 L.Ed.2d 162 (1969) (Harlan, J., concurring). I would not extend the holding in the Skokie case to this quite different situation. For that reason, I think the Court correctly exercises its discretion to deny the application for extraordinary relief in this case. djQ Justice KENNEDY, with whom Justice BRENNAN, Justice MARSHALL, and Justice SCALIA join, dissenting. A Georgia trial court issued an injunction prohibiting at least one of the applicants from engaging in certain means of public protest. The Supreme Court of Georgia refused to stay the injunction pending appeal. National Socialist Party of America v. Skokie, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977), does not distinguish among speakers based on the content of their speech. Its terms, in my view, require us to treat the stay application as a petition for certiorari, to grant certiorari, and to reverse the denial of a stay by the Supreme Court of Georgia. See id., at 44, 97 S.Ct., at 2206. I dissent from the denial of the stay. Granviel v. Texas [110SCt2577,495US963,109LEd2d758] 110 S.Ct. 2577 495 U.S. 963 109 L.Ed.2d 758 Kenneth GRANVIEL, petitioner, v. TEXAS.
 No. 89-6484
 Supreme Court of the United States
 May 29, 1990
 The petition for a writ of certiorari to the United States Court of Appeals for the Fifth Circuit.
 
 
 1
 Denied.
 
 
 2
 Justice MARSHALL, with whom Justice BRENNAN joins, dissenting.
 
 
 3
 This case raises the question whether an indigent criminal defendant's constitutional right to psychiatric assistance in preparing an insanity defense is satisfied by court appointment of a psychiatrist whose examination report is available to both the defense and prosecution. The Fifth Circuit, on habeas review, held that such an appointment is sufficient. Granviel v. Lynaugh, 881 F.2d 185 (1989). This ruling is squarely inconsistent with our decision in Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), that a State must provide an indigent defendant a psychiatrist to assist in preparing and presenting his defense. Ake mandates the provision of a psychiatrist who will be part of the defense team and serve the defendant's interests in the context of our adversarial system. To allow the prosecution to enlist the psychiatrist's efforts to help secure the defendant's conviction would deprive an indigent defendant of the protections that our adversarial process affords all other defendants.
 
 
 4
 Kenneth Granviel was tried for capital murder in 1983. Prior to trial, Granviel requested that the court appoint a mental health expert to help him prepare an insanity defense. He specifically asked that the expert's report not be made available to the prosecution. The trial court denied petitioner's request for confidential expert assistance; it did, however, appoint a disinterested expert whose report would go to both the defense and prosecution, as authorized by Tex.Code Crim.Proc., Art. 46.03, § 3 (Vernon 1979 and Supp.1990). That statute provides:
 
 
 5
 "(a) If notice of intention to raise the insanity defense is filed . . ., the court may, on its own motion or motion by the defendant, his counsel, or the prosecuting attorney, appoint disinterested experts experienced and qualified in mental health and mental retardation to examine the defendant with regard to the insanity defense and to testify thereto at any trial or hearing on this issue.
 
 
 6
 "(b) The court may order any defendant to submit to examination for the purposes described in this article. . . .
 
 
 7
 "(c) The court shall advise any expert appointed pursuant to this section of the facts and circumstances of the offense with which the defendant is charged and the elements of the insanity defense.
 
 
 8
 "(d) A written report of the examination shall be submitted to the court within 30 days of the order of examination, and the court shall furnish copies of the report to the defense counsel and the prosecuting attorney."
 
 
 9
 See also Art. 46.02 (providing for court appointment of expert to determine defendant's competency to stand trial).
 
 
 10
 Pursuant to this law, the court also allowed the prosecution, over Granviel's objection, to rebut Granviel's evidence of insanity with the report of a psychiatrist appointed at Granviel's request.
 
 
 11
 In Ake, we held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." 470 U.S., at 83, 105 S.Ct., at 1096 (emphasis added). Ake was concerned not with establishing a procedure whereby an independent examiner could determine the validity of a defendant's insanity defense and present his findings to both parties and to the court. Rather, Ake was directed at providing a defendant with the tools necessary to present an effective defense within the context of our adversarial system, in which each party marshals evidence favorable to its side and aggressively challenges the evidence presented by the other side. In that adversarial system, "the psychiatrists for each party enable the [court or] jury to make its most accurate determination of the truth on the issue before them." Id., at 81, 105 S.Ct., at 1095. Thus, we recognized in Ake that a defense psychiatrist is necessary not only to examine a defendant and to present findings to the judge or jury on behalf of the defendant, but also to "assist in preparing the cross-examination of a State's psychiatric witnesses," id., at 82, 105 S.Ct., at 1096, and in determining "how to interpret their answers," id., at 80, 105 S.Ct., at 1095. Just as an indigent defendant's right to legal assistance would not be satisfied by a State's provision of a lawyer who, after consulting with the defendant and examining the facts of the case and the applicable law, presented everything he knew about the defendant's guilt to the defendant, the prosecution, and the court, so his right to psychiatric assistance is not satisfied by provision of a psychiatrist who must report to both parties and the court.
 
 
 12
 Ake § requirement of psychiatric assistance does not mean that a defendant can shop around for a psychiatrist "of his personal liking" or "receive funds" from the State to hire a psychiatrist on his own. Id., at 83, 105 S.Ct., at 1096. The trial court retains the authority to choose the psychiatrist, as long as that psychiatrist is competent. Nevertheless, the function of the psychiatrist chosen by the court is still to assist the defendant in preparing and presenting his defense. Of course, Ake does not guarantee a psychiatrist "who will reach biased or only favorable conclusions." 881 F.2d, at 192. If the psychiatrist appointed to assist the defendant determines that the defendant was not insane at the time of the offense, he probably will not be able to provide much helpful testimony for the defense on the insanity issue. But the psychiatrist's determination may not be revealed to the prosecution for use as evidence any more than may the results of the investigation and research of the defendant's court-appointed lawyer.
 
 
 13
 Texas' provision of a "disinterested" expert thus does not satisfy Ake. Texas may, of course, provide for appointment of such an expert to aid the factfinder in determining the validity of a defendant's insanity defense. Cf. Fed.Rule Evid. 706. Such an appointment, however, must supplement—not take the place of appointment of a psychiatrist to assist the defendant in preparing and presenting his defense.
 
 
 14
 Granviel is entitled to a new trial because he was deprived of the assistance required under AKE. Furthermore, as this result is dictated by Ake, which we decided before petitioner's conviction became final, Granviel's claim is not barred by this Court's decision in Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, ----, 103 L.Ed.2d 334 (1989). Because the Fifth Circuit's misinterpretation of Ake substantially undermines an indigent defendant's ability to present an effective defense, I would grant the petition to reaffirm our holding in Ake. Even if Granviel did not have a meritorious Ake claim, I would grant the petition and vacate petitioner's death sentence on the ground that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments. Gregg v. Georgia, 428 U.S. 153, 231, 96 S.Ct. 2909, 2973, 49 L.Ed.2d 859 (1976) (MARSHALL, J., dissenting).